# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:21-cv-00094-RJC

| | |
|---|---|
| GLORIA DENISE CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 12, 14). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Gloria Denise Caldwell ("Ms. Caldwell") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claims. Ms. Caldwell filed an application for disability insurance benefits on September 26, 2017. She also filed an application for supplemental security income on June 1, 2018. In both applications, the alleged onset date was September 21, 2017. (Tr.[1] 16). Ms. Caldwell later amended the alleged onset date to June 1, 2019, at a hearing before an ALJ. (*Id.* at 129). The ALJ issued a favorable decision, finding Ms. Caldwell disabled within the meaning of the Social

---

[1] Citations to "Tr." throughout the order refer to the administrative record at DE 10.

Security Act. (*Id.* at 125–34). Ms. Caldwell then filed a request for review of the decision, alleging that she did not understand the consequences of amending her onset date. (*Id.* at 139–40). The Appeals Counsel granted the request for review and remanded the case for a new hearing, finding that the circumstances surrounding the amendment of Ms. Caldwell's alleged onset date at the prior hearing constituted an abuse of discretion. (*Id.* at 137–41). After the new hearing, the ALJ found Ms. Caldwell was not disabled. (*Id.* at 15–25).

In denying Ms. Caldwell's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 15–25). At step one, the ALJ found that Ms. Caldwell had not engaged in substantial gainful activity since September 21, 2017, the original alleged onset date. (*Id.* at 18). At step two, the ALJ found that Ms. Caldwell had the following combination of severe impairments: osteoarthritis, degenerative joint disease of the bilateral hips, and lumbar degenerative disc disease. (*Id.*). The ALJ also found that Ms. Caldwell had the following combination of non-severe impairments: substance abuse and depression. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 20). Before moving to step four, the ALJ found that Ms. Caldwell had the residual functional capacity ("RFC") to perform light work as explained below:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand, or walk six hours in an eight-hour workday; and requires an option to sit/stand hourly while on task. She could occasionally climb ladders, ropes, or scaffolds. She could frequently balance. She could occasionally stoop, kneel, and crouch, but never crawl. She could frequently reach overhead with the bilateral upper extremities. She must avoid greater than occasional exposure to extreme cold, vibration, and hazards. She could perform unskilled work in two-hour segments (due to pain, not from mental health symptoms).

(*Id.*). At step four, the ALJ found that Ms. Caldwell could perform past relevant work as a hand packager. (*Id.* at 24).

After exhausting her administrative remedies, Ms. Caldwell brought the instant action for review of Defendant's decision denying her applications for disability insurance benefits and supplemental security income. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises four challenges: the ALJ misevaluated the medical opinions of Dr. Gross, Dr. Milam, and Dr. Torres; and the ALJ's RFC is unsupported by substantial evidence. None of the challenges warrant remand.

#### A. Medical Opinions

For claims filed after March 27, 2017, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Thus, the treating physician rule is no longer applicable for claims filed after March 27, 2017. *Gleason v. Kijakazi*, No. 1:20-CV-00350-GCM, 2021 WL 5182102, at *2 (W.D.N.C. Nov. 8, 2021). Instead, when determining the persuasiveness of medical opinions and prior administrative medical findings the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship the medical source has with the claimant, including the (i) length, (ii) frequency, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520(a), (c). The most important of these factors are supportability and consistency:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520(b)(2), (c)(1)-(2). The ALJ's decision should explain how he considered both of these factors. *Id.* § 404.1520(b)(2). Further noteworthy is that the agency adjudicator will consider one or more medical opinions or prior administrative medical findings from the same medical source together using the above factors and is not required to articulate how he or she considered each opinion or finding individually. *Id.* § 404.1520(b)(1).

> i. Dr. Gross

Plaintiff argues the ALJ generally misevaluated Dr. Gross' opinions in light of the regulatory framework and specifically argues that the ALJ's reasoning was flawed for a number of reasons. The Court will address each in turn.

On February 7, 2018, Dr. Gross, a family practice doctor, opined that Plaintiff's hips constantly interfere with her concentration and ability to perform work-related tasks; that Plaintiff could sit for four hours, stand/walk for one hour, lift 20 pounds but cannot walk with it; and that Plaintiff would need unscheduled breaks and would be absent from work three to four times per month. (Tr. 600–01). The ALJ found this opinion "less persuasive because it is inconsistent with the treatment record." (Tr. 23). Specifically, the ALJ noted that orthopedic evidence shows that Plaintiff's right hip arthroplasty, performed in May 2018, was successful in resolving symptoms. (Tr. 1027 ("[Plaintiff] come in today 2 weeks status post right total hip arthroplasty . . . She is very happy . . . She notes a marked amount of pain relief compared to preoperatively given how much trouble her hip was giving her.")). The ALJ also noted "that Dr. Gross' opinion that the claimant could carry no weight is not supported by the medical record and [is] inconsistent with the

claimant's testimony regarding her daily activities." (*Id.*). Notwithstanding, the ALJ found Dr. Gross' assessment regarding the effect of pain on Plaintiff's ability to concentrate consistent with the overall record and limited the RFC to unskilled work in two-hour segments accordingly. (*Id.*).

On March 21, 2019, Dr. Gross opined that Plaintiff cannot stand, can sit for no more than four hours, and can stand/bend/lift/carry/walk for zero hours; that Plaintiff's condition is "permanent;" and that "she needs hip surgery." (Tr. 687). The ALJ found this opinion unpersuasive and the limitations "extreme." (Tr. 23–24). Specifically, the ALJ noted that Dr. Gross is not an orthopedic specialist and that Dr. Stanley, Plaintiff's orthopedist, noted that Plaintiff was improving after her May 2018 right hip surgery—mainly that Plaintiff walked with a non-antalgic gait with good coordination and normal balance. (*Id.*; Tr. 1009). The ALJ also explained that Dr. Gross' opinion was three months before Plaintiff underwent successful left hip arthroplasty. After which, providers from OrthoCarolina, as well Dr. Gross himself, found that Plaintiff ambulated normally. (Tr. 23–24, 1071, 1359).

On March 5, 2019, Dr. Gross also opined that Plaintiff "is unable to work due to extreme pain and limited range of motion in all joints." (Tr. 683). Similarly, on November 4, 2020, Dr. Gross opined that Plaintiff is "unable to do physical work." (Tr. 1386). Neither opinion explained the severe restrictions, and the ALJ found both opinions unpersuasive. First, the ALJ noted that the opinions are vague and provide no quantifiable assessment of Plaintiff's ability to perform basic work activities. (Tr. 24). Second, the ALJ explained that disability determinations are reserved to the Commissioner because it involves legal, medical, and vocational issues, in addition to physician notes and opinions.

Turning to the ALJ's general evaluation, here the ALJ properly discussed and evaluated Dr. Gross' opinions and sufficiently explained why he found them less persuasive or unpersuasive.

In evaluating the opinions, the ALJ considered the supportability and consistency factors by explaining that Dr. Gross' opinions are neither consistent with Dr. Gross' own physical evaluations of Plaintiff nor other physical evaluations from orthopedic doctors. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016), and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986). Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Plaintiff's other arguments regarding specific errors in the ALJ's analysis also fail. First, Plaintiff argues that Dr. Gross' statement that Plaintiff "can lift 20lb but cannot walk with it" only means that Plaintiff cannot carry twenty pounds, not that Plaintiff is unable to carry any weight at all as interpreted by the ALJ. However, lifting and carrying are different activities that require different functional abilities. Moreover, Dr. Gross opined that Plaintiff could lift and carry for zero hours in an eight-hour workday (i.e., Plaintiff can do neither). Therefore, the ALJ's interpretation is reasonable.

Second, Plaintiff argues that the ALJ's analysis of her daily activities failed to account for how Plaintiff could perform activities during an eight-hour workday. Notably, Plaintiff fails to identify any inconsistency between Plaintiff's reported daily activities and the ALJ's RFC assessment. Additionally, the ALJ relied on Plaintiff's daily activities as they related to Dr. Gross' opinion that she was unable to carry. Specifically, Plaintiff asserted that her hands were "pretty good," which conflicts with Dr. Gross' opinion that Plaintiff cannot carry. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion. *Monroe v. Colvin*, 826 F.3d

7

176, 189 (4th Cir. 2016).

Third, Plaintiff argues that the RFC limitation to unskilled work in two-hour segments to account for Plaintiff's pain is in error because a normal workday already includes a morning, lunch, and afternoon break, which equates to approximately two hour increments of working. It is unclear how this is an error as Plaintiff argues against an RFC limitation that is supported by record evidence. Of note, Plaintiff fails to address the limitation to unskilled work and how normal breaks would account for this limitation.

Fourth, Plaintiff argues that the ALJ improperly played doctor when the ALJ explained that one of the reasons he found Dr. Gross' opinions less persuasive was because the opinions conflicted with medical evidence from Plaintiff's orthopedic specialists. An ALJ is impermissibly "playing doctor" when he substitutes his judgment for that of the medical provider. *Payne v. Comm'r of Soc. Sec.*, No. 1:20-CV-00223-RJC, 2022 WL 680225, at *4 (W.D.N.C. Mar. 7, 2022). Here, the ALJ never substituted his judgment for any medical provider, but simply evaluated the persuasiveness of an opinion based on whether it was supported by medical evidence, as required by the regulations.

Fifth, Plaintiff argues the ALJ improperly cherry-picked evidence. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Here, the ALJ explained Plaintiff's subjective testimony; discussed medical treatment records for Plaintiff's right hip, left hip, lower back, substance abuse, and mental health conditions; and evaluated medical opinions from a State agency medical consultant, a consultative medical consultant, Dr. Milam, and Dr. Gross. Based on the totality of this evidence, the ALJ

found that Plaintiff was limited in her ability to work but not to the point of being disabled under the Act. Of note, Plaintiff's conclusory cherry-picking argument fails to show how the ALJ ignored facts supporting a finding of disability for those facts supporting a non-disability finding. While Dr. Gross' opinion was extreme and tended to support a disability finding, the ALJ did not ignore this evidence, but addressed it and found it unpersuasive. This was not in error.

Regardless, even if there was a specific error as alleged by Plaintiff, the ALJ provided substantial other reasons discounting Dr. Gross' opinion, and Plaintiff has failed to show how any specific error would lead to a different result. *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result").

ii. <u>Dr. Milam</u>

Plaintiff argues that the ALJ improperly failed to address Dr. Milam's September 16, 2019 opinion, which Plaintiff alleges states that she should not return to work indefinitely.

On August 5, 2019, Dr. Milam from OrthoCarolina stated that Plaintiff should not return to work for three months on a fill-in-the-box type form. (Tr. 1369). The ALJ found this statement less persuasive because it references a temporary duration. (Tr. 22). Similarly, on September 16, 2019, Dr. Milam stated that Plaintiff should not return to work on another fill-in-the-box type form. (Tr. 1251). In the anticipated length of time out of work section, Dr. Milam stated, "currently on SSI." Notably, at the time of Dr. Milam's second statement, the ALJ in the original hearing had found Plaintiff disabled, and the Appeals Counsel did not start reviewing the original ALJ's decision until July 17, 2020, after Plaintiff petitioned for review. Accordingly, on September 16, 2019, when Dr. Milam made the statement, Plaintiff was on disability.

However, unlike Plaintiff's argument, Dr. Milam did not state that Plaintiff should refrain

from work indefinitely, and Dr. Milam did not leave the box blank. Instead, Dr. Milam listed Plaintiff's current status, "currently on SSI." This is not an indication of the amount of time, in Dr. Milam's professional opinion, that Plaintiff should refrain from work, but simply is a listing of her current disability status under the Social Security Act.

Moreover, while the ALJ did not directly address the September 16, 2019 statement, this does not run afoul of the regulations. An ALJ can consider all the medical opinions from a single provider at the same time and is not required to articulate how he or she considered each opinion or finding. 20 C.F.R. § 404.1520(b)(1). Here, the ALJ addressed the opinion of Dr. Milam, as required under the regulations, and Dr. Milam was not required to address the two statements separately.

Regardless, even if there was an error, it was harmless as it would not have led to a different result. *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result"). Fill-in-the-box type medical forms, like Dr. Milam's statements, are generally weaker evidence. *Pate v. Berryhill*, No. 5:16-CV-00864-D, 2018 WL 577998, at *8 (E.D.N.C. Jan. 10, 2018). And, as previously explained, it is reserved to the Commissioner to determine whether Plaintiff is disabled such that she cannot work, not Dr. Milam.

   iii.  <u>Dr. Torres</u>

Plaintiff argues that the ALJ mischaracterized Dr. Torres' opinion as "light work" when Dr. Torres indicated the RFC was for "sedentary work," and because, contrary to the ALJ's decision, Dr. Torres did provide support for the reduced standing/walking limitation.

Dr. Torres is a State agency medical consultant who provided an assessment on August 28, 2018. (Tr. 606). Dr. Torres recommended a "sedentary RFC." (Tr. 605). Dr. Torres found that

10
Case 5:21-cv-00094-RJC   Document 16   Filed 08/31/22   Page 10 of 15

Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk at least 2 hours; sit about 6 hours; occasionally climb ramps or stairs, balance, stoop, kneel, crouch; and never crawl or climb ladders, ropes, or scaffolds. (Tr. 606–10). Dr. Torres also found that Plaintiff had no push/pull limitations other than for lifting or carrying, and had no manipulative, visual, or communicative limitations. (*Id.*). The ALJ summarized Dr. Torres' opinion, stating:

> [T]he August 28, 2018 assessment from State agency medical consultant Javier Torres, MD that the claimant could perform light work with occasional ramps, stair; no ladders, ropes, or scaffolds; occasional balance, stoop, kneel, and crouch but no crawl; and avoid concentrated exposure to extreme cold, vibration, hazards is persuasive because it is consistent with the overall evidence. (Ex. 10F). However, there is no support for reduced standing/walking four hours. Aside from the periods between the bilateral hip surgeries, the claimant maintained full strength with normal gait and station (June 27, 2019 and July 29, 2020) and normal gait with no evidence of balance disturbance (OrthoCarolina notes dated August 5, 2019, September 16, 2019, January 6, 2020) (pain management records dated August 18, 2020 and September 1, 2020). (Ex. 28F, pp. 2, 17; 32F, pp. 6, 20, 31; 33F, pp. 7, 11).

Plaintiff is correct that Dr. Torres wrote "sedentary RFC" at the beginning of his assessment; however, the ALJ is correct that the limitations Dr. Torres proscribed fit with the agency's definition of light work.[2] (Tr. 23, 605–613). For example, Dr. Torres opined that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for at least two hours, sit about 6 hours, and could perform most postural activities. This is consistent with light work. Moreover, the ALJ is not bound by Dr. Torres' use of the word "sedentary." Instead, the ALJ may rely on Plaintiff's specific work-related abilities expressed on a function-by-function basis, rather than on an exertional term used by Dr. Torres.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Regarding the standing or walking limitations, the ALJ sufficiently explained his rationale for finding them unsupported. First, Dr. Torres' statement that Plaintiff could walk or stand "at least 2 hours in an 8-hour workday"[3] is of limited value as the RFC should describe the most, not the least, that an individual can do. *See* SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*.). As such, there is no inconsistency with Dr. Torres' limitation to at least 2 hours of walking or standing, and the ALJ's RFC limiting walking or standing to a maximum of 6 hours.

Moreover, Plaintiff's argument that the ALJ's assertion that there is no support for Dr. Torres' reduced walking or standing limitation is incorrect. The ALJ accounted for limitations in standing or walking in the RFC. Therefore, the ALJ did not find there was no support for these limitations, only that the record as a whole did not support the severity of the limitations as opined by Dr. Torres. As the ALJ explained, aside from periods between the bilateral hip surgeries, Plaintiff maintained full strength with normal gait and station. Regardless, the ALJ still accounted for limitations in standing and walking, among others, at least in part based on Plaintiff's subjective complaints of pain. (Tr. 20, 22). Therefore, Plaintiff's other argument, that the ALJ failed to account for Plaintiff's pain, also fails.

## B. RFC

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not rely on any opinion of record when creating the RFC and because the ALJ should have further developed the record by seeking an updated medical opinion.

---

[3] The ALJ made a scrivener's error when he stated that Dr. Torres limited Plaintiff to standing or walking four hours a day. Dr. Torres actually limited Plaintiff to standing or walking two hours a day. However, this error is harmless as the ALJ adequately explained objective findings in the record that support Plaintiff's ability to stand and walk. (Tr. 21–23). Moreover, the ALJ limited the RFC to walking or standing for six hours and allowed Plaintiff the option to sit or stand hourly. Therefore, while the ALJ did not agree with the extent of the standing or walking limitations opined by Dr. Torres, the ALJ still found Plaintiff was limited in this area and accounted for it in the RFC.

The regulations, as well as longstanding precedent, make clear that an ALJ is not required to rely exclusively on medical opinions, or on any one medical opinion, when creating an RFC. *See* 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *7. The Western District has held that "[a]n ALJ need not parrot a single medical opinion, or even assign 'great weight' to *any* opinions, in determining an RFC." *Smith v. Berryhill*, No. 3:17-CV-00506-FDW, 2018 WL 3447187, at *9 (W.D.N.C. July 17, 2018). Moreover, the Fourth Circuit has held that, just because "the ALJ is a layman and did not obtain an expert medical opinion," it does not mean "that the ALJ's RFC finding is not supported by substantial evidence." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011). Accordingly, Plaintiff's argument that the ALJ's RFC is not supported by substantial evidence because the ALJ did not rely on any medical opinion of record is unavailing and also untrue as the ALJ found the State agency medical consultant's opinion, the consultative medical examiner's opinion, Dr. Torres' opinion, Dr. Milam's opinion, and Dr. Gross' opinion at least somewhat persuasive.

Plaintiff's second argument, that the ALJ should have further developed the record with additional medical opinions, is also unavailing. Here, the ALJ discussed Plaintiff's history of bilateral hip impairments, related surgical procedures, and related objective exam findings and concluded that "the evidence does not show debilitating pain or inability to perform work within [Plaintiff's] residual functional capacity." (Tr. 21–23). Although the record occasionally showed decreased findings in areas such as range of motion and gait testing (Tr. 21–22, 621, 625, 633, 1037, 1045, 1279, 1287), the ALJ supported this conclusion by citing to numerous examples of normal objective findings, including ambulation, coordination, balance, sensation, and strength, as well as Plaintiff's report of significant pain relief following her second hip replacement (Tr. 21–22, 652, 658, 1009, 1014, 1016, 1023, 1027, 1234, 1259, 1273, 1279, 1287, 1296, 1318). The ALJ

13
Case 5:21-cv-00094-RJC   Document 16   Filed 08/31/22   Page 13 of 15

also acknowledged Plaintiff's complaints of lower extremity pain and difficulty standing for long periods, which the RFC's sit/stand option accommodates. (Tr. 20, 22). Based on these findings, the ALJ found that greater RFC restrictions were not warranted. (Tr. 23–24). Although Plaintiff argues the ALJ did not explain how her activities of daily living support her ability to perform light work, this contention is misplaced. The ALJ did not heavily rely on Plaintiff's daily activities when ascribing her limitations[4], and any potential error is harmless as the ALJ adequately supported his RFC analysis based on the entirety of the record evidence.

The Fourth Circuit has held that "the ALJ is not required to further develop the record where sufficient facts exist to determine disability." *Scarberry v. Chater*, 52 F.3d 322, n.13 (4th Cir. 1995) ("The ALJ had before him sufficient facts to determine the central issue of disability. We note that Junnie's attorney does not identify what the missing evidence would have shown; rather, she merely speculates that having that evidence 'might' have produced a different result."). In order to remand an ALJ's decision, "the claimant must show the ALJ failed to adequately develop the record, and that such failure was prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 200 (4th Cir. 1980).

As previously discussed, the ALJ in this case detailed the medical examination notes, surgical reports, and diagnostic studies from physicians who treated Plaintiff over a period of years. (Tr. 21–24). The ALJ also evaluated reports from two consultative examiners. (Tr. 23–24). In addition, at the hearing, the ALJ heard testimony from Plaintiff regarding her medical history, work background, and daily activities. Absent from Plaintiff's argument—that the ALJ should have further developed the record—is the identification of any missing medical evidence that was not included in the record and an explanation of what this missing evidence would have

---

[4] The ALJ only utilized Plaintiff's daily activities when evaluating the opinion evidence once—to show that Plaintiff's testimony that her hands were "pretty good" conflicted with Dr. Gross' opinion that Plaintiff cannot carry. (Tr. 23).

shown. Accordingly, this runs afoul of Fourth Circuit precedent which requires a plaintiff to identify what the missing evidence would have shown, rather than merely speculating that having certain evidence might have produced a different result. *Scarberry*, 52 F.3d at n.13.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 12), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 14), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 31, 2022

Robert J. Conrad, Jr.
United States District Judge